# Commonwealth *v.* Wyoda, Appellant.

*Constitutional law—Mines and mining—Act of July 15, 1897, P. L. 287.*

1. The Act of July 15, 1897, P. L. 287, entitled, "An Act to provide for the examination of miners in the anthracite coal regions of this commonwealth and to prevent the employment of incompetent persons as miners in the anthracite coal mines" is constitutional.

*Criminal law—Forgery—Miner's certificate.*

2. On the trial of an indictment for forging a miner's certificate where a witness testifies that he is familiar with the signatures of the miners' examining board of the district, and with the certificates which they issue, he may be permitted to testify as to the differences between the certificate in question and the signatures thereto and the genuine certificates issued by the board.

3. In such a case where it appears that the genuine certificates as well as the forged one were made out upon printed blanks which blanks were filled in with writing when the certificate was issued, it is competent for the commonwealth to prove that all genuine certificates were printed alike in a particular form, and upon a peculiar colored paper essentially different from that used in the certificate in question. The possession of other blanks similar to the one fraudulently filled out by the defendant raises no presumption in law of the defendant's guilt, but such possession is evidence in connection with the other evidence in the case tending to show guilt.

4. The competency and skill of a miner whose name has been inserted in a forged miner's certificate cannot be considered on the trial of an indictment for forging such a certificate.

*Criminal law—Bribing constable—Presumption—Evidence.*

5. On the trial of an indictment for crime evidence is admissible that the prisoner had offered the constable who arrested him money to let him go; but it is reversible error for the court to charge the jury that such evidence raises a presumption of the prisoner's guilt.

*Criminal law—Forgery—Guilty knowledge.*

6. On the trial of an indictment for forgery a conviction cannot be sustained unless it is shown that the defendant had knowledge that the instrument in question was forged.. The mere fact that the instrument was forged and that the defendant had uttered it, is not sufficient.

*Evidence—Spelling of foreign name—Forgery—Criminal law.*

7. The manner in which foreign proper names are spelled, and

whether in spelling those names those familiar with the language use a "z" where in the English language an "s" would be used, are not questions of law, but of fact.

Argued Oct. 5, 1910.   Appeal, No. 8, March T., 1911, by defendant, from judgment of Q. S. Luzerne Co., April Sessions, 1910, No. 57, on verdict of guilty in case of Commonwealth v. Paul Wyoda.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.   Reversed.

Indictment for forgery.   Before GARMAN, J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

[The defendant, Paul Wyoda, is charged in this indictment with two offenses, or in two counts, as we commonly express it; first, with forging the certificate in question; and, second, with uttering or issuing or putting in circulation—the word uttering has that significance in law.] [5]

[It is of equal importance to the commonwealth, because if you believe the defendant to be guilty and convict him of the offense, it would have a tendency to stop a practice that might lead to a great loss of life in the coal regions of this state.   The commonwealth has, in its police power, imposed by its mining laws great restrictions upon the mining of coal.   You understand that it requires certain methods of ventilation, and it requires certain safeguards and protections to the men in the mines.   One of the protections to the men engaged in mining is that they shall pass an examination before competent miners to determine their fitness to be intrusted with this solemn responsibility.   Otherwise the lives of hundreds of men might be endangered in case of inefficiency or incompetency.] [6]

[If he made that offer to the constable of $12.00 to let him go, it may be considered by you in determining the question of his guilt.   Because, if when a man is arrested,

he offers money to the officer for his release, the law raises a presumption that he is guilty in that case, and it requires an explanation at his hands.] [7]

[Now, there is a proposition of the law that the possession of a forged instrument raises a presumption of guilt on the part of the beneficiary.] [8]

[Now, it is also another principle of law that the possession of other similar instruments by him when accused of uttering the forgery, is sufficient to raise a presumption that the utterance was with guilty knowledge as to the false character of the document. The possession of this other lot, twenty-four in number, by Wyoda, raised the presumption as to guilty knowledge on his part, and a presumption against him as to the uttering of these documents.] [9]

[But no matter what the intent of Chapulis may have been, if his intention was to be crooked, a dark-lantern business, as is argued, if the defendant furnished him with a fraudulent paper, if the defendant uttered a forged paper, the defendant might be guilty, even though Chapulis may also be guilty of a violation of the law.] [10]

[It was said by Mr. Jones in his address: "You have got to convict this man on the commonwealth's testimony." Of course he meant as to certain particulars; because as an efficient, capable, good lawyer he understands, and you understand, that you must consider, with the commonwealth's testimony, the defendant's testimony and all the testimony in arriving at a conclusion.] [11]

[If you find that this instrument was issued by Wyoda, and that it was issued with the intention that Chapulis should use it, as a genuine certificate, and that thereby some person might be damaged, it does not matter who might be prejudiced, it is not absolutely necessary that Chapulis be hurt, but if injury might result from the transaction, that is sufficient to infer the intent of fraud on the part of the perpetrator.] [12]

[The word "Griffiths" is written upon this paper

"Griffithz." Now, to the court that would be an indication that that name was written by a foreigner, from the well-known philological fact that in the foreign languages they write phonetically, and that in spelling "Griffiths" the foreigner is likely to put a "z" as an "s."] [13]

[The presumption of the law, at the time of the discovery of this forged document in the possession of Chapulis, was that he forged it. He explains that, and shifts the presumption, and is it for you to say whether you believe him or not—to Wyoda, as having issued it.] [14].

[And then, in determining whether Wyoda did it, you must also consider what motive he would have; whether he would gain anything by it, or not; and in the determination of this question you will have to consider from that standpoint. If you believe, however, Chapulis, that Paul Wyoda handed him the paper, then the presumption is attached to Wyoda (and that is what I intended to say in my charge in chief), and then Wyoda must explain it.] [15]

Defendant presented this point:

Under all the evidence in the case there can be no conviction for the reason that the commonwealth having shown by Peter Chapulis that he was a competent and qualified miner, having passed the examination in Pittston, and having received from the miners' examining board of that inspection district, a certificate of his competency, and qualification; that the issuing of the fraudulent certificate, which they now claim to be forged, was not in prejudice of any person's rights. *Answer:* The point is denied. It is sufficient when the act charged is of such a character as might be prejudicial. If Chapulis's old certificate was taken up, he was prejudiced. In other words, he had given up a good certificate for a bad one, and that certainly would prejudice anyone. Besides, he was prejudiced in the standing of the community as his arrest proved. While the law says to the prejudice of another, it is sufficient in law if somebody might be in-

jured or prejudiced. Now, it is not necessary, either, gentlemen of the jury, to show the actual damage. It is enough that the accused designed and intended that the instrument was to be used as genuine and that there existed a possibility of defrauding some one. It is not necessary to show actual damage to Chapulis or to any one other person. But if you find that the defendant issued the paper, and that he intended that it should be used as a genuine mine certificate, that it was his purpose to pass Chapulis as a genuine miner on that certificate, it is sufficient to result in a conviction here even if no injury beyond that has been shown. [16]

Verdict of guilty, upon which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were (1) refusal to quash the indictment; (2–4) rulings on evidence sufficiently stated in the opinion of the Superior Court; (5–16) above instructions, quoting them.

*S. S. Herring*, with him *Roger Dever* and *B. R. Jones*, for appellant, cited: Com. v. Hall, 23 Pa. Superior Ct. 104; Miller v. State, 51 Ind. 405; Fox v. People, 95 Ill. 71; Com. v. McClellan, 42 Pa. Superior Ct. 504.

*W. Alfred Valentine*, district attorney, with him *M. H. McAniff*, assistant district attorney, for appellee, cited: Com. v. Silcox, 161 Pa. 484; Com. v. McManiman, 27 Pa. Superior Ct. 304; Com. v. Winkelman, 12 Pa. Superior Ct. 497; Com. v. Martin, 34 Pa. Superior Ct. 451.

Opinion by Porter, J., November 21, 1910:

The first count of the indictment charged the defendant with the forgery of a miners' certificate, purporting to be issued by the miners' examining board of the third inspection district in the anthracite coal region of Pennsylvania, and certifying to the competency and qualifications of one Peter Chapulis, entitling him to be employed as a miner. The second count charged the defendant with

fraudulently and knowingly uttering the said forged certificate. The appellant was acquitted upon the first count of the indictment and found guilty and sentenced upon the second count.

The first specification of error is based upon the refusal of the court below to quash the indictment. All the reasons urged in the court below for quashing the indictment have been expressly abandoned here save that which raised the question of the constitutionality of the Act of July 15, 1897, P. L. 287, entitled "An Act to provide for the examination of miners in the anthracite coal regions of this commonwealth and to prevent the employment of incompetent persons as miners in the anthracite coal mines." The question raised by this specification of error has been considered by this court in Commonwealth v. Shaleen, 30 Pa. Superior Ct. 1; by the Supreme Court of this state in Commonwealth v. Shaleen, 215 Pa. 595 and by the supreme court of the United States in Shaleen v. Pennsylvania, 207 U. S. 603; and the constitutionality of the statute has been sustained. We are no longer free to consider the question an open one, and the specification of error is overruled.

The witness Davis testified that he was the assistant foreman of a mine and that the certificate in question had been presented to him by Chapulis, who sought employment as a miner. He identified the certificate, and having testified that he was familiar with the signatures of the miners' examining board of the district, and with the certificates which they issued, it was entirely competent to permit him to testify as to the differences between the certificate in question and the signatures thereto and the genuine certificates issued by the board. The second specification of error is without merit. The genuine certificates as well as this forged one were made out upon printed blanks, the blank spaces being filled in with the proper data when the certificate was issued. The jury were in this case necessarily called upon to determine whether the certificate in question was a forgery, and any

circumstance which would throw direct light upon that question was proper to be considered. It was, therefore, competent for the commonwealth to prove that all genuine certificates were printed alike, in a particular form and upon a peculiar colored paper, essentially different from that used in the certificate in question. This was a fact to be considered by the jury in determining whether the paper was a forgery. The third specification of error is overruled. The fourth specification of error is without an exception to support it and must be disregarded. It was entirely proper for the court to explain to the jury the offenses with which the defendant stood charged in the counts of the indictment, respectively, and the meaning of the legal terms used in charging such offenses. There was no impropriety in the action of the court in impressing upon the jury the importance of the case both to the defendant and the commonwealth, and the fifth and sixth specifications of error are dismissed. The eighth and fourteenth specifications of error relate only to the charge of forgery, not to that of knowingly uttering a forged instrument, and, as the defendant was acquitted upon the first count of the indictment, it is not necessary to consider in this case the questions raised by the eighth and fourteenth specifications of error. In passing upon the question of the guilt or innocence of the appellant it was the duty of the jury to consider not only the testimony produced by the commonwealth but also that produced by the defendant, and there was no error in the instruction of the court of which the eleventh specification of error complains. The question involved in this issue was whether the defendant had fraudulently made, or knowingly uttered, a forged certificate. The jury were not to pass upon the question of the competency and skill of Chapulis as a miner, nor had this appellant been authorized to pass upon that question, and the written request of the defendant for instructions, which sought to bring that question into the case, was properly refused. The sixteenth specification of error is dismissed.

There was evidence tending to show that the defendant, upon his arrest, had offered the constable $12.00 to let him go, and the language of the court, in instructing the jury, with regard to this evidence, is the subject of the seventh specification of error. The learned judge said: "If he made that offer to the constable of twelve dollars to let him go, it may be considered by you in determining the question of his guilt." Had the learned judge left the matter here there would have been no just cause of complaint, for when one charged with crime uses violence to escape, or offers a bribe to the arresting officer to permit him to escape, it is proper for a jury to consider such fact in passing upon the question of the guilt or innocence of the defendant. "Evidence of the conduct of one accused of a crime at the time of his arrest is competent to show consciousness of guilt. Resistance to arrest is evidence of fear of punishment, and if the resistance be violent may be evidence of malice. The presumption is that one who is wrongfully accused will rely on his consciousness of innocence, while a guilty man will resort to violence in order that he may escape dreaded punishment. Such evidence is not sufficient of itself to warrant a conviction, but may have weight in connection with the other evidence in the case." This statement of the principle involved was used by our Brother HENDERSON in Commonwealth v. McManiman, 27 Pa. Superior Ct. 304, and is abundantly supported by authority. The language of the court below, above quoted, was a correct statement of the law, but unfortunately, the court added: "Because, if when a man is arrested, he offers money to the officer for his release, the law raises a presumption that he is guilty in that case, and it requires an explanation at his hands." The offer of a bribe to induce an officer to permit one charged with a crime to escape cannot be held to be more than an unlawful attempt to escape. Such an act can signify nothing more, as to the guilt of the defendant, than would flight from arrest. No presumption of law arises that the defendant is guilty of the crime for

which he has been arrested.   The utmost effect that such an act can have is, in connection with evidence of other facts, to give rise to an inference of fact; which must be drawn by the jury.   We said, in the case above cited, that such evidence is not sufficient of itself to warrant a conviction, yet the instruction of the court below must certainly have been understood by the jury as warranting a conviction of the defendant of the offense with which he was charged, if they found the single fact that he had offered a bribe to the officer when he was arrested.   The jury were being instructed by the court as to the law applicable to the case.   Having been instructed in this manner, they would, if they found that the defendant had offered a bribe to the constable, find the defendant guilty of uttering a forged instrument because the law raised a presumption of his guilt, unless the defendant satisfactorily explained why he had offered the bribe.   The error of the court was in stating that to be a presumption of law which was only a matter from which the jury were permitted to infer a fact, when taken in connection with other evidence tending to establish the guilt of the defendant.   The seventh specification of error is sustained.

The language of the court which is the subject of the ninth specification of error charged the jury, in substance, that the possession by the defendant, when arrested, of other similar instruments when accused of uttering the forgery was sufficient to raise a presumption of law that the utterance of the forged instrument in question was with guilty knowledge as to the fraudulent character of the document: "The possession of this other lot, twenty-four in number, by Wyoda, raised the presumption as to guilty knowledge on his part, and the presumption against him as to the uttering of these documents."   The other lot of papers referred to in the charge, were blank, unsigned certificates, they were not forged documents, although they might have been used to facilitate further forgeries.   The possession of these blanks was evidence to be considered by the jury, in connection with the other

direct evidence in the case tending to show defendant's guilt, in passing upon the question whether the defendant had guilty knowledge when he uttered the particular forged instrument in question, but no presumption of law that the defendant was guilty arose from the mere possession of these blanks. The blanks which were found in the possession of the defendant were not in fact "similar instruments," in that they were not forged, they were merely tools that a forger might use. The ninth specification of error is sustained.

The defendant was acquitted upon the first count which charged the forgery of the instrument, but convicted upon the second count which charged that he unlawfully and fraudulently did utter the forged instrument, knowing it to be false and fraudulent. Those parts of the charge assigned for error in the tenth, twelfth and fifteenth specifications of error, when considered in connection with the second count of the indictment upon which alone the defendant was convicted, failed to properly instruct the jury as to the necessity for their finding that the defendant had guilty knowledge of the character of the instrument at the time he uttered it, in order to warrant a conviction upon the second count of the indictment. The jury must be convinced that the defendant had knowledge that the instrument was forged in order to warrant a conviction of fraudulent uttering: Commonwealth v. Hall, 23 Pa. Superior Ct. 104. The instructions in question left the jury free to convict the defendant if they found that the instrument was in fact forged and that the defendant had uttered it. This entirely relieved the jury from consideration of the question whether the defendant had guilty knowledge. These specifications of error are sustained.

The manner in which foreign proper names are spelled, and whether in spelling those names those familiar with the language use a "z" where in the English language an "s" would be used are not questions of law but of fact. The name of one of the miners' examining board in the

inspection district in question was Evan P. Griffiths, and that name in the certificate alleged to be forged was spelled Griffithz. Now, if that particular name would be spelled in that manner by a person of the foreign race, to which the defendant belonged, that ought to have been proved as a fact. The guilt of one charged with a serious offense ought not to be inferred from such a fact, unless the fact is proved. The thirteenth specification of error is sustained.

The judgment is reversed and a venire facias de novo awarded.